**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**BROOKE BYERS,**

      **Plaintiff,**

                             **Case No. 2:23-cv-1320**

      **vs.**
                             **Judge Sarah D. Morrison**

                             **Magistrate Judge Elizabeth P. Deavers**

**BLUE RIBBON WARRANTY**
**CORP.**, *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Motion to Compel Discovery (ECF No. 38 & 41), Defendants' Memorandum in Opposition (ECF No. 42) and Plaintiff's Reply. (ECF No. 44.) For the reasons that follow, Plaintiff's Motion is **GRANTED**.

## I.

On April 14, 2023, Plaintiff filed a Complaint against Defendants seeking a declaratory judgment that each of the share buy-back provisions of four Shareholder Agreements are unconscionable.[1] She alleged separate counts of reformation/recission for each Shareholder Agreement of the four Defendant-closely held corporations controlled by certain senior members of Plaintiff's family: Blue Ribbon Warranty, Corp. ("Blue Ribbon"), Byers Holding, Inc. ("Byers Holding"), Geo. Byers Sons Holding, Inc. ("GBS"), and Blue Moon Warranty, Inc. ("Blue Moon")

---

[1] The Shareholder Agreements for all the Defendants' companies are attached to Plaintiff's Complaint. (ECF No. 1-1, 1-2, 1-3 and 1-4.)

(collectively, "Defendants").  Plaintiff owns shares in all four Defendants, either individually or through various family trusts.

Plaintiff alleges in her Complaint that Defendants' companies, when combined, generate hundreds of millions of dollars in revenue annually and are extremely valuable.  She alleges that the value of the shares under the Shareholder Agreements is only a small fraction of their true worth.  (Compl. at ¶ 2.)  Each of the Shareholder Agreements contain stock purchase provisions that utilize "book value" to measure the worth of the shares.  (*Id*. at ¶ 54.)  Plaintiff alleges that the book value of the shares, which is what she would be forced to accept if she sold her shares, is much lower than the fair market value.  (Compl. at ¶¶ 56, 62.)

Through her Motion to Compel, Plaintiff seeks responses to 18 Requests for Production of Documents.[2]  Seventeen of those Requests (Nos. 7, 10-18, and 20-26) seek financial information that Plaintiff asserts is relevant to her claims that the Shareholder Agreements are unconscionable.  Plaintiff maintains that, in order to establish that the Shareholder Agreements are unconscionable, she will have to show that the Agreements are not "fair or reasonable."  Plaintiff contends that one of the central ways in which she will make that showing is by demonstrating that the value of the shares as required under the Shareholder Agreements is intentionally and artificially deflated by questionable accounting practices by using a book value.  Plaintiff asserts that the shares should be valued using the fair market value.  She submits that the fair market value is substantially higher than the book value of the shares, so much so that the Shareholder Agreements are unconscionable.

According to Plaintiff, this case turns in large part on the discrepancy between the book value of the Defendants' shares versus their fair market value.  She asserts that the first 17 Requests at issue in the Motion to Compel seek financial documents necessary to establish that discrepancy.

---

[2] A list of all 18 Requests is included in Plaintiff's Motion to Compel.  (ECF No. 41 at pp. 3-5.)

Plaintiff also seeks shareholder agreements and operating agreements of DBB Investments. (Request No. 37.)  DBB Investments is a predecessor entity to Defendants Blue Moon and Blue Ribbon. Plaintiff alleges the shareholder agreement of DBB Investments was much more favorable to the shareholders and that Blue Moon and Blue Ribbon were created to have more onerous shareholder terms designed to minimize the value the new generation of shareholders can obtain from the companies. Plaintiff argues that these documents are relevant to establish her claims that the Shareholder Agreements of Blue Moon and Blue Ribbon are unconscionable.

Defendants counter that the requested information is not relevant and not proportional to the needs of the case.  In Defendants' view, "[t]he crux of the case is ***whether the method of valuing the shares in the companies, as set forth in the shareholder agreements***, is procedurally and substantively unconscionable."  (Defs' Memo. in Opp., at p. 2, PageID 617) (emphasis added.) Defendants say that "[w]hen this case is over, the outcome will be either the shareholder agreements['] valuation methods are unconscionable, or they are not.  The Court will not re-write the shareholder agreements.  The Court will not opine on the value of the businesses."  (*Id*.)  Under these theories, Defendants did not produce any responsive documents to the 18 Requests at issue here. Defendants argue that they have produced sufficient responsive documents because they provided the companies' consolidated financial statements, tax returns, and a spreadsheet detailing the computation of the share value.

## II.

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).  Consistent with this Rule, Local Rule

37.1 requires the parts to "exhaust[ ] among themselves all extrajudicial means for resolving their differences" before filing an objection, motion, application, or request relating to discovery. S.D. Ohio Civ. R. 37.1. Local Rule 37.1 also allows parties to first seek an informal telephone conference with the Judge assigned to supervise discovery in the case, in lieu of immediately filing a discovery motion. *Id*. The Court is satisfied that this prerequisite has been met here.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc*., 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*. (citation omitted.) The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc*., 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing

*O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (noting that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "Relevance is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citation omitted)). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

### III.

"Under Ohio law, the unconscionability doctrine has two components: (1) substantive unconscionability, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible. Both elements must be proven to find a contract unconscionable." *Sager v. Coolidge Wall Womsley & Lombard Co., L.P.A.*, No. 3:05CV00062, 2005

WL 8161326, at *6 (S.D. Ohio Sept. 6, 2005); *see also Collins v. Click Camera & Video, Inc.*, 86 Ohio App. 3d 826, 834 (1993) ("Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable.  Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability.").  A determination of unconscionability "requires a case-by-case review of the facts and circumstances surrounding the agreement."  *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 158 (2004).

Plaintiff maintains that the crux of her claims is that the Shareholder Agreements are substantively unconscionable, that is, unfair and unreasonable, because they use questionable accounting practices and book value to value the shares as opposed to fair market value.  In essence, Plaintiff submits that the book value of the shares is a fraction of the fair market value, making the Shareholder Agreements unconscionable.   As a remedy, Plaintiff asks the Court to reform each of the Shareholder Agreements "to allow shareholders to sell their shares at real fair market value." (Compl. at ¶¶ 78, 86, 95 &104.)  Plaintiff contends that calculating the fair market value of the shares is "an absolutely critical component of proving [her] case."  (Mot. to Comp. at p. 7, PageID 661.) Further, Plaintiff argues that, in order to perform that calculation of fair market value, "Plaintiff (and her experts) need the documentation sought in this motion to compel."  (*Id.*, citing Rev. Rul. 59-60, 1959-1 C.B. 237 (1959) (requiring consideration of "***all available financial data, as well as all relevant factors affecting the fair market value***" in "valuing the stock of closely held corporations." (emphasis added).")  The Court agrees.

Not much discussion is warranted here.   Defendants have wholly misconstrued Plaintiff's claims.  As the Complaint makes clear, as well as her Motion to Compel, Plaintiff contends the Shareholder Agreements are unconscionable because they value the shares using a deflated book value as opposed to a fair market value.   Demonstrating that the provided method of valuation (*i.e.*,

6

book value) is unconscionable necessarily involves a consideration of (1) the accuracy of the method and whether Defendants' have manipulated that method; and (2) the disparity between the valuation of the shares using book value compared to other methods (*e.g.*, fair market value).  The financial information at issue is directly relevant to one or both of those inquiries.

Defendants assert that "[t]he Court will not re-write the shareholder agreements.  The Court will not opine on the value of the businesses."  (Memo. in Opp. at p. 2, PageID 677.)  Plaintiff, however, is seeking this relief exactly in the form of her claims for reformation and declaratory judgment.  (Compl. at Request for Relief ¶¶ C-G, PageID 172-173.)  Defendants argue that "[b]ased on the terms of the shareholder agreements, the issue for the court is to determine if the formula for valuation of the . . . shares provided for in these agreements is unconscionable.  Whether or not a different formula desired by Plaintiff yields a higher valuation is not the issue before the Court."  (*Id*. at p. 4, PageID 679.)  Further, Defendants state that "this case is not about whether such information is accurate or not . . . .  In short – this case is not about whether Defendants' math is right; this case is about the method of applying that method to calculate the value of the shares."  (*Id* at p. 7, PageID 682.)  Defendants' contention that Plaintiff must use the book value because that is what the Shareholder Agreements dictate and is not entitled to check the math misses the mark.  These arguments recast Plaintiff's claims completely.

Plaintiff asserts that that the value of the shares under the Shareholder Agreements is only a small fragment of their true worth.  Defendants admit that they are "one of Ohio's largest auto dealers and an entity that owns significant real estate in central Ohio."  (*Id*. at p. 9, PageID 684.) They nevertheless contend that the financial information is not relevant because '[n]one of the requested documents will move the proverbial needle to make it more or less likely that the method of valuation contained in the shareholder agreement is unconscionable."  (*Id*.)

Again, Defendants have fundamentally misconstrued the allegations in Plaintiff's Complaint.  The issue is not whether the *method of valuation* contained in the in the Shareholder Agreements is unconscionable.  The issue is whether the value of the shares Shareholder Agreements are unconscionable *because they value the shares using a deflated book value as opposed to a fair market value.*  In the absence of this understanding, none of Defendants' objections to the Requests for Production can be sustained.

Defendants now contend that the documents sought by Plaintiff are voluminous and unduly burdensome to produce.  While the burden of production is one factor that the Court will consider with respect to the scope of discovery, that issue, in and of itself, is not sufficient to permit the Defendants to outright refuse to produce *any* documents responsive to the Requests.  *See, e.g.*, *Am. Mun. Power, Inc. v. Voith Hydro, Inc.,* No. 2:17-CV-708, 2021 WL 1084605, at *4 (S.D. Ohio Mar. 22, 2021) ("The Court recognizes that responding to discovery is generally bothersome, and may indeed be, at least to some extent, burdensome . . . .  But the fact that it will be either bothersome or burdensome to respond to a discovery request does not necessarily mean that it will be unduly so.").  Any burden of production must be considered in the context of whether it is proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Here, Plaintiff has demonstrated that the requested documents are relevant and essential to this case.  Any objections as to burden should be framed in the context of Plaintiff's true claims that the value of the shares of these companies are artificially deflated under the required book value method, and that the Shareholder Agreements are therefore unconscionable and should be reformed.

**IV.**

For the foregoing reasons, Plaintiff's Motion to Compel is **GRANTED.**  Defendants are **DIRECTED** to produce the responses to Plaintiff's discovery requests within **TWENTY-ONE**

**DAYS** of the date of this Opinion and Order.  Defendants may make appropriate objections in the context of Plaintiff's claims as more fully described herein.

       **IT IS SO ORDERED.**

                                             */s/ Elizabeth A. Preston Deavers*
**DATED:  February 9, 2024**           **ELIZABETH A. PRESTON DEAVERS**
                                           **UNITED STATES MAGISTRATE JUDGE**